UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KENYATTA MURPHY,                              :

        Petitioner,                           :  07 Civ. 9468 (RJS) (AJP)

        -against-                             :  **REPORT AND RECOMMENDATION**

DALE ARTUS, Superintendent,                   :
Clinton Correctional Facility,
                                              :
        Respondent.
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Richard J. Sullivan, United States District Judge:**

        Pro se petitioner Kenyatta Murphy seeks a writ of habeas corpus from his March 5, 2004 conviction, following a guilty plea in Supreme Court, Bronx County, of three counts of first degree robbery, and concurrent sentences of ten years imprisonment.  (Dkt. No. 1: Petition ["Pet."] ¶¶ 1-5; Pet. Att.: Murphy 1st Dep't Br. at 1; see Dkt. No. 10: Alabre Aff. ¶ 4.)

        Murphys' habeas corpus petition attaches his brief to the First Department, thereby apparently raising those claims, as follows:  (1) the sentencing judge should have sentenced Murphy to a youthful offender adjudication (Murphy 1st Dep't Br. at 13-26); and (2) Murphy's sentence "was unduly harsh and should be reduced in the interest of justice" (Murphy 1st Dep't Br. at 13, 27-32).

        For the reasons set forth below, Murphy's habeas petition should be DENIED.

## FACTS

**Plea Allocution**

On January 30, 2004, Murphy pled guilty before Justice Margaret Clancy in Supreme Court, Bronx County, to three counts of first degree robbery. (Dkt. No. 11: Plea Transcript ["P."] 1-3, 17.) Murphy acknowledged that he was waiving his right to a trial, his right to present certain defenses and his right to appeal. (P. 4-6, 15-16.) Murphy admitted that on or about January 9, 2003, while displaying what appeared to be a firearm, he forcibly stole money from Keisha Munn. (P. 6-7.) Murphy further admitted that, on or about January 15, 2003, while displaying what appeared to be a firearm, he stole money from Patricia Rosa and Debbi Ann Lawrence. (P. 7-8.)

Defense counsel noted that Murphy told him that in all three cases he used an "imitation pistol," and that he had explained to Murphy that if that defense were presented at trial it might reduce the offenses from first to second degree robbery. (P. 9-11.) Murphy confirmed that he understood this and was giving up the right to present that defense. (P. 11.)

Justice Clancy explained that the maximum sentence for each count of first degree robbery was twenty-five years, but that as part of the plea bargain she promised to sentence Murphy to no more than ten years in aggregate. (P. 12.) Justice Clancy also indicated that, while she would permit counsel to present facts and arguments supporting a lesser sentence, based on what she knew about the case, the most likely sentence would be ten years. (P. 12-13.) Murphy acknowledged that he understood he most likely would receive this sentence. (P. 13.) The Assistant District Attorney

("A.D.A.") agreed that the plea was acceptable but noted that he would seek a sentence of nineteen years imprisonment. (P. 15.) Justice Clancy scheduled sentencing for March 5, 2004. (P. 17-18.)

**Sentencing**

On March 5, 2004, the A.D.A. recommended a nineteen year sentence. (Dkt. No. 12: Sentencing Transcript ["S."] 1, 3.) The A.D.A. noted that Keisha Munn, who was robbed at gun point while in her EMT uniform in her ambulance a block from the hospital where she worked, was emotionally scarred from the incident. (S. 3.) Moreover, Murphy had pointed what appeared to be a gun at a plain-clothes officer who had approached Murphy after observing him follow a woman in a manner consistent with the prior robberies. (S. 4-5.) At the precinct, Murphy made a written statement untruthfully claiming that he had found the gun earlier that day. (S. 5.)

Defense counsel asked Justice Clancy to consider youthful offender treatment, and in the alternative, argued that mitigating factors supported a reduction of the proposed ten year sentence. (S. 6, 13-14.) Defense counsel quoted portions of a psychologist's report that had been prepared for sentencing. (S. 6-11.) The psychologist's report suggested that Murphy's "history of impulsivity, difficulty tolerating and processing his own emotions and immaturity have rendered him especially vulnerable to act out behaviors in the context of adolescence." (S. 8.) Defense counsel also suggested that Murphy may have a learning disability or attention disorder. (S. 10.) Defense counsel noted that Murphy had demonstrated improved performance in school following his arrest, suggesting some motivation to better himself. (S. 10-11.) Additionally, defense counsel pointed out that Murphy had expressed remorse for his actions, and that the crimes apparently were committed

with an imitation or toy pistol. (S. 11-12.) Defense counsel ended his remarks by "ask[ing] the Court seriously to consider the youthful offender treatment" or to at least reduce the sentence under ten years based on the psychologist's report. (S. 13-14.)

Murphy acknowledged his guilt and expressed remorse for his actions, and asked that in prison he get into a "program" so as not to waste his time. (S. 14-15.)

Upon considering counsels' arguments, Murphy's statement, the probation report, and the psychologist's report, Justice Clancy concluded that Murphy had committed terribly violent acts which caused "a terrible trauma to all three of the victims." (S. 15.) Justice Clancy said she found Murphy's remorse to be sincere, but nevertheless was concerned by his lack of judgment and inability to think through the consequences of his actions. (S. 15-16.) Justice Clancy acknowledged Murphy's age of seventeen at the time of the crimes and the fact that he had no prior criminal history, but declined to adjudicate Murphy as a youthful offender. (S. 16.) Justice Clancy sentenced Murphy as she had said was "most probable," to concurrent terms of ten years imprisonment. (S. 16, 17.) Justice Clancy noted that Murphy had "waived his right to appeal, but there are certain issues that can't be waived." (S. 19.)

**Murphy's Direct Appeal**

Murphy's appeal to the First Department claimed that: (1) "justice will not be served unless [Murphy's] prison sentence is replaced by a youthful offender adjudication" (Dkt. No. 1: Pet. Att.: Murphy 1st Dep't Br. at 13-26); and (2) in the alternative, his sentence "was unduly harsh and should be reduced in the interest of justice." (Murphy 1st Dep't Br. at 13, 27-32.)

5

On October 12, 2006, the First Department unanimously affirmed Murphy's conviction and sentence, holding in full that: "Regardless of the validity or applicability of defendant's waiver of his right to appeal, we conclude that the court properly exercised its discretion in denying youthful offender treatment, given defendant's serious and repeated crimes." People v. Murphy, 33 A.D.3d 426, 426, 821 N.Y.S.2d 764, 765 (1st Dep't 2006) (citation omitted).

On January 19, 2007, the New York Court of Appeals denied leave to appeal. People v. Murphy, 8 N.Y.3d 848, 830 N.Y.S.2d 707 (2007).

**Murphy's Federal Habeas Corpus Petition**

Murphy's pro se habeas corpus petition attaches his First Department brief, apparently raising these claims: (1) the sentencing judge should have sentenced Murphy to a youthful offender adjudication (Dkt. No. 1: Pet. Att.: Murphy 1st Dep't Br. at 13-26); and (2) Murphy's sentence "was unduly harsh and should be reduced in the interest of justice." (Murphy 1st Dep't Br. at 13, 27-32).[1]

---

[1] By letter dated December 10, 2007, Murphy requested that his petition be held in abeyance to permit him to file a C.P.L. § 440 motion in state court challenging the sufficiency of his plea. (Dkt. No. 4: Murphy 12/10/07 Letter to Court.) Judge Sullivan granted Murphy's motion, but noted that Murphy "is warned to proceed promptly to avoid a possible statute of limitations bar." (Dkt. No. 4: 12/21/07 Memo Endorsed Order.) The case was referred to me on January 9, 2009 (Dkt. No. 6), and on January 16, 2009, I ordered the parties to advise the Court as to the status of Murphy's C.P.L. § 440 motion (Dkt. No. 7: 1/16/09 Order). On January 21, 2009, A.D.A. Alabre informed the Court that although more than a year had elapsed, Murphy had not filed his C.P.L. § 440 motion; I therefore directed the State to respond to Murphy's original habeas petition. (Dkt. No. 8: Alabre 1/21/09 Letter to Court & 1/26/09 Memo Endorsed Order.) Murphy, via a filing by his inmate assistant, requested further time to file his C.P.L. § 440 motion, because of alleged problems caused by prison conditions. (Dkt. No. 9: Love Aff.) I denied the request, noting that under state law Murphy could still file a C.P.L. § 440 motion, but that since the AEDPA imposes time limits to bring a federal habeas petition, Murphy had waited too long to bring his C.P.L. motion and thus
(continued...)

## ANALYSIS

### I.    THE AEDPA REVIEW STANDARD

Before the Court can determine whether petitioner is entitled to federal habeas relief, the Court must address the proper habeas corpus review standard under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners." Williams v. Taylor, 529 U.S. 362, 403, 120 S. Ct. 1495, 1518 (2000). The AEDPA imposed a more stringent review standard, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[2]

---

[1]   (...continued)
the Court could no longer stay consideration but rather would address on the merits the claims from Murphy's original petition. (Dkt. No. 9: 1/30/09 Memo Endorsed Order.)  The Court notes that Murphy did not file objections to any of my orders.

[2]   See also, e.g., Knowles v. Mirzayance, No. 07-1315, -- S. Ct. --, 2009 WL 746274 at *7 (U.S. Mar. 24, 2009); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005); Cox v. Donnelly, 387 F.3d 193, 197 (2d Cir. 2004); Dallio v. Spitzer, 343 F.3d 553, 559-60 (2d
(continued...)

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning."  Williams v. Taylor, 529 U.S. at 404-05, 120 S. Ct. at 1519.[3/]  Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." Williams v. Taylor, 529 U.S. at 412, 120 S. Ct. at 1523.[4/]  "That federal law, as defined by the

---

[2/]   (...continued)
Cir. 2003), cert. denied, 541 U.S. 961, 124 S. Ct. 1713 (2004); Eze v. Senkowski, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the habeas petitions of state prisoners.'") (quoting Lainfiesta v. Artuz, 253 F.3d 151, 155 (2d Cir. 2001), cert. denied, 535 U.S. 1019, 122 S. Ct. 1611 (2002)).

[3/]   Accord, e.g., Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.), cert. denied, 540 U.S. 1091, 124 S. Ct. 962 (2003); Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000); Lurie v. Wittner, 228 F.3d 113, 125 (2d Cir. 2000), cert. denied, 532 U.S. 943, 121 S. Ct. 1404 (2001); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000), cert. denied, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[4/]   Accord, e.g., Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from the Court regarding this [issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); Yarborough v. Alvarado, 541 U.S. 652, 659, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); Wiggins v. Smith, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); Lockyer v. Andrade, 538 U.S. 63, 72, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); Rodriguez v. Miller, 499 F.3d 136, 140 (2d Cir. 2007) ("'Clearly established federal law' refers only to the holdings of the Supreme Court.  No principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief.  Leading by example, Musladin admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions.") (citations & fn. omitted), cert. denied, 128 S. Ct. 1655 (2008); Howard v. Walker, 406 F.3d at 122; Tueros v. Greiner, 343 F.3d 587, 591 (2d Cir. 2003), cert. denied, 541 U.S. 1047, 124 S. Ct. 2171 (2004); Parsad v. Greiner, 337 F.3d at 181; DelValle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002); Yung v. Walker, 341

(continued...)

Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d at 42; accord, e.g., Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008), cert. denied, 129 S. Ct. 1312, 2009 WL 425166 at *1 (Feb. 23, 2009). "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent." Yung v. Walker, 341 F.3d at 110; accord, e.g., Rodriguez v. Miller, 499 F.3d at 140; DelValle v. Armstrong, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . . A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

Williams v. Taylor, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[5/]

---

[4/] (...continued)
F.3d 104, 109-110 (2d Cir. 2003); Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909, 123 S. Ct. 251 (2002); Loliscio v. Goord, 263 F.3d 178, 184 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 309 (2d Cir. 2001).

[5/] Accord, e.g., Knowles v. Mirzayance, 2009 WL 746274 at *7 (The Supreme "Court has held on numerous occasions that it is not 'an unreasonable application of clearly established federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this [Supreme] Court.") (quotation omitted); Davis v. Grant, 532 F.3d at 140; Brown v. Payton, 544 U.S. 133, 125 S. Ct. 1432, 1438-39 (2005); Bell v. Cone, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); Price v. Vincent, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); Lockyer v. Andrade, 123 S. Ct. at 1173-74; Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006), cert. denied, 549 U.S. 1215, 127 S. Ct. 1267 (2007); Henry v.
(continued...)

In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523.[6/] However, "[t]he term 'unreasonable' is . . . difficult to define." Williams v. Taylor, 529 U.S. at 410, 120 S. Ct. at 1522. The Supreme Court made clear that "an unreasonable application of federal law is different from an incorrect application of federal law." Id.[7/] Rather, the issue is "whether the state court's

---

[5/] (...continued)
Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d 210, 219 (2d Cir.), cert. denied, 546 U.S. 889, 126 S. Ct. 215 (2005); Tueros v. Greiner, 343 F.3d at 591; DelValle v. Armstrong, 306 F.3d at 1200; Yung v. Walker, 341 F.3d at 109; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

[6/] Accord, e.g., Wadddington v. Sarausad, 129 S. Ct. 823, 831 (2009); Brown v. Payton, 544 U.S. at 141, 125 S. Ct. at 1439; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2534-35; Jones v. West, 555 F.3d 90, 96 (2d Cir. 2009); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006), cert. denied, 549 U.S. 1257, 127 S. Ct. 1383 (2007); Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d at 181.

[7/] See also, e.g., Wadddington v. Sarausad, 129 S. Ct. at 831; Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have explained: '[A] federal habeas court may not issue the writ simply because that court concludes that the state-court decision applied [a Supreme Court case] incorrectly.'") (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002)); Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175; Jones v. West, 555 F.3d at 96; Davis v. Grant, 532 F.3d at 140; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 124-25; DelValle v. Armstrong, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the state court's decision was not an unreasonable application of, or contrary to, clearly established federal law as defined by Section 2254(d),
(continued...)

application of clearly established federal law was objectively unreasonable." Williams v. Taylor, 529 U.S. at 409, 120 S. Ct. at 1521.[8/] "Objectively unreasonable" is different from "clear error." Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."). This is a "substantially higher threshold" than incorrectness. Knowles v. Mirzayance, 2009 WL 746274 at *8.[9/] "[T]he range of reasonable judgment can depend in part on the nature of the relevant rule." Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149.[10/] "Even if the state court issues a

---

[7/] (...continued)
we may not grant habeas relief even if in our judgment its application was erroneous.").

[8/] Accord, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v. Smith, 539 U.S. at 520-21, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct. at 1853; Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1174-75; Woodford v. Visciotti, 537 U.S. at 25-27, 123 S. Ct. at 360-61; Davis v. Grant, 532 F.3d at 140; Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006), cert. denied, 128 S. Ct. 75 (2007); Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002); Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 128-29.

[9/] However, the Second Circuit has explained "that while '[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).; accord, e.g., Jones v. West, 555 F.3d at 96; Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Eze v. Senkowski, 321 F.3d at 125; Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 341 F.3d at 110; Loliscio v. Goord, 263 F.3d at 184.

[10/] The Supreme Court explained:

(continued...)

decision 'contrary to' clearly established Supreme Court law, . . . a petitioner 'cannot obtain relief . . . unless application of a *correct* interpretation of that [Supreme Court] decision leads to the conclusion that his rights were violated.'"  Cousin v. Bennett, 511 F.3d 334, 339 (2d Cir.), cert. denied, 128 S. Ct. 2910 (2008).

      Moreover, the Second Circuit has held "that a state court determination is reviewable under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed."  Kennaugh v. Miller, 289 F.3d at 45.[11]

---

10/    (...continued)
> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. at 663, 124 S. Ct. at 2149; accord, e.g., Knowles v. Mirzayance, 2009 WL 746274 at *8 (Where the Supreme Court "standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."); Rodriguez v. Miller, 499 F.3d at 143; Hawkins v. Costello, 460 F.3d at 243.

11/    Accord, e.g., Davis v. Grant, 532 F.3d at 140-41; Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see Yarborough v. Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision.  There is force to this argument.  Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.  At the same time, the difference between applying a rule and
(continued...)

12

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." Yung v. Walker, 341 F.3d at 109; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Mosby v. Senkowski, 470 F.3d at 519.

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

Sellan v. Kuhlman, 261 F.3d at 312; accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); Mosby v. Senkowski, 470 F.3d at 519; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 220; Wade v. Herbert, 391 F.3d 135, 140 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'" "Such a summary determination, even absent citation of federal case law, is a

---

[11]/ (...continued)
extending it is not always clear. Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.") (citations omitted).

determination 'on the merits' and as such requires the deference specified by § 2254."  Moreover, "if any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition – the word 'denied' – triggered AEDPA deference."); but cf. Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (A "contrary-to-fact construction is not the same as an alternative holding. . . . We decline to read a contingent observation as an 'adjudication on the merits.'"  De novo review applies in such a case.).

Where the state court decision is not clear as to whether it rests on federal law or state procedural law, the Second Circuit in Jimenez v. Walker, 458 F.3d 130, 145-46 (2d Cir. 2006), cert. denied, 549 U.S. 1133, 127 S. Ct. 976 (2007), instructed that the court must "examine the three clues laid out in Coleman, Quirama and Sellan" – that is, "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances."  Jimenez v. Walker, 458 F.3d at 145 & n.16; accord, e.g., Clark v. Perez, 510 F.3d 382, 394 (2d Cir.), cert. denied, 129 S. Ct. 130 (Oct. 6, 2008).  Using these three factors, the court should

> classify the decision as either:
>
> (1)  fairly appearing to rest primarily on federal law or to be interwoven with federal law or

14

> (2)   fairly appearing to rest primarily on state procedural law.
>
> Absent a clear and express statement of reliance on a state procedural bar, the Harris presumption applies to decisions in the first category and deems them to rest on the merits of the federal claim. Such decisions are not procedurally barred and must be afforded AEDPA deference as adjudications "on the merits" under 28 U.S.C. § 2254(d). The Harris presumption does not apply to decisions in the second category, which show themselves to rest on an independent state procedural bar. Nor does it apply to decisions in the first category which contain a clear statement of reliance on a state procedural bar. No AEDPA deference is due to these decisions, but the state may successfully assert that habeas relief is foreclosed provided that the independent state procedural bar is adequate to support the judgment and that neither cause and prejudice nor a fundamental miscarriage of justice is shown.
>
> The effect of these rules is to present federal habeas courts with a binary circumstance: we either apply AEDPA deference to review a state court's disposition of a federal claim or refuse to review the claim because of a procedural bar properly raised. The middle ground . . . does not exist.

Jimenez v. Walker, 458 F.3d at 145-46 (citations & fns. omitted); accord, e.g., Hawkins v. Costello, 460 F.3d at 242 ("In Jimenez v. Walker, we recently made clear that when a state court rejects a petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the adjudication rested on the merits."). Of course, "[i]f there is no [state court] adjudication on the merits [and no procedural bar], then the pre-AEDPA, de novo standard of review applies." Cotto v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003); see also Jimenez v. Walker, 458 F.3d at 145 n.17.

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue

15

made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220.  "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'"  Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Lynn v. Bliden, 443 F.3d at 246-47.

## II. MURPHY'S EXCESSIVE SENTENCE AND DENIAL OF YOUTHFUL OFFENDER ADJUDICATION CLAIMS ARE NOT COGNIZABLE ON HABEAS REVIEW

Murphy's habeas petition asserts that his sentence was "unduly harsh and should be reduced in the interest of justice."  (Dkt. No. 1: Pet., incorporating Pet. Att.: Murphy 1st Dep't Br. at 13-26.)

An excessive sentence claim does not provide a basis for habeas relief, because "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).[12]  In this case, it is undisputed that Murphy's sentence is within the range prescribed by state law.  First degree robbery is a class B violent felony, carrying a maximum sentence of twenty-five years imprisonment.  Penal Law §§ 160.15, 70.02(1)(a), 70.02(3)(a).  Murphy was sentenced to concurrent terms of ten years imprisonment on each of the three counts.  (See page 4 above.)  Because Murphy's sentence is within the statutory range, it is not reviewable on habeas corpus by this Court as "excessive."

---

[12]   Accord, e.g., Fabre v. Taylor, 08 Civ. 5883, 2009 WL 162881 at *14 (S.D.N.Y. Jan. 20, 2009) (Peck, M.J.); Garcia v. Rivera, 07 Civ. 2535, 2007 WL 2325928 at *17 & n.18 (S.D.N.Y. Aug. 16, 2007) (Peck, M.J.) (& cases cited therein); see Thomas v. Senkowski, 968 F. Supp. 953, 956 (S.D.N.Y. 1997) ("It is well established that, when a sentence falls within the range prescribed by state law, the length of the sentence may not be raised as grounds for federal habeas relief."); see also, e.g., Townsend v. Burke, 334 U.S. 736, 741, 68 S. Ct. 1252, 1255 (1948) (severity of sentence generally not reviewable on habeas).

Murphy's habeas petition also asserts that the trial court's failure to grant youthful offender adjudication[13] was unjust. (Pet., incorporating Pet. Att.: Murphy 1st Dep't Br. at 13, 27-32.)

Denial of youthful offender adjudication does not provide a basis for habeas relief, because "it is well established that the United States Constitution grants no independent due process right either to youthful offender treatment or to any particular procedure for denying it, so long as the trial judge imposed a sentence that was lawful under state law." Auyeung v. David, 00 Civ. 1353, 2000 WL 1877036 at *3 (S.D.N.Y. Dec. 26, 2000) (citing United States ex rel. Frasier v. Casscles, 531 F.2d 645, 647–48 (2d Cir. 1976) ("The granting or denial of youthful offender treatment is analogous to that of sentencing . . . . Once it is determined that the judge has exercised his discretion within statutory limits, appellate review is at an end.")).[14]

---

[13] Murphy's eligibility for youthful offender adjudication is not in dispute. However, such adjudication is discretionary. C.P.L. § 720.20 provides that:

> 1. Upon conviction of an eligible youth, the court must order a pre-sentence investigation of the defendant. After receipt of a written report of the investigation and at the time of pronouncing sentence the court must determine whether or not the eligible youth is a youthful offender. Such determination shall be in accordance with the following criteria:
>
> (a) If in the opinion of the court the interest of justice would be served by relieving the eligible youth from the onus of a criminal record and by not imposing an indeterminate term of imprisonment of more than four years, the court may, in its discretion, find the eligible youth is a youthful offender; . . .

C.P.L. § 720.20(1)(a).

[14] See also, e.g., Dorszynski v. United States, 418 U.S. 424, 443, 94 S. Ct. 3042, 3053 (1974) (with respect to analogous federal youthful offender statute, "[o]nce it is made clear that the sentencing judge has considered the option of treatment under the [Federal Youth Corrections] Act and rejected it, . . . no appellate review is warranted.").

(continued...)

In this case, it is undisputed that Justice Clancy considered youthful offender adjudication. (See page 4 above.) Because Justice Clancy had discretion under state law, her decision is not reviewable on habeas corpus by this Court, just as excessive sentence claims are not reviewable on habeas corpus.

## CONCLUSION

For the reasons set forth above, Murphy's habeas petition should be DENIED in its entirety and a certificate of appealability should not be issued.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Sullivan, 500 Pearl Street, Room 615, and to my chambers, 500 Pearl Street, Room 1370. Any

---

14/ (...continued)
Even under New York state law, "[t]he decision to grant or deny youthful offender status rests within the sound exercise of the sentencing court's discretion and, absent a clear abuse of that discretion, its decision will not be disturbed." People v. McLucas, 58 A.D.3d 950, 951, 871 N.Y.S.2d 482, 483 (3d Dep't 2009) (citing cases); accord, e.g., People v. Victor J., 283 A.D.2d 205, 206, 724 N.Y.S.2d 162, 163 (1st Dep't) ("The decision whether to grant youthful offender status to an eligible youth generally 'lies within the sound discretion of the sentencing court.'"), appeal denied, 96 N.Y.2d 942, 733 N.Y.S. 2d 383 (2001); Peter Preiser, Practice Commentaries to C.P.L. § 720.20 ("Naturally, as the plain language of the statute indicates, the defendant has no right to youthful offender treatment: the defendant's right extends only to consideration by the court; and the granting or denial is a matter of discretion.").

requests for an extension of time for filing objections must be directed to Judge Sullivan (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).

Dated:    New York, New York
April 1, 2009

Respectfully submitted,

**Andrew J. Peck**
United States Magistrate Judge

Copies to:    Kenyatta Murphy
Rither Alabre, Esq.
Judge Richard J. Sullivan

H:\OPIN\MURPHY